FILED

2013 MAY 28 PM 2:58

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1 ANDRÉ BIROTTE JR.
United States Attorney
2 ROBERT E. DUGDALE
Assistant United States Attorney
3 Chief, Criminal Division
JAMES A. BOWMAN (Cal. Bar No. 220227)
4 Assistant United States Attorney
Major Frauds Section
5      1100 United States Courthouse
       312 North Spring Street
6      Los Angeles, California 90012
       Telephone: (213) 894-2213
7      Facsimile: (213) 894-6269
       E-mail: james.bowman@usdoj.gov
8
Attorneys for Plaintiff
9 UNITED STATES OF AMERICA

10                    UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,        No. CR **CR 13 00379**

13            Plaintiff,

                                    PLEA AGREEMENT FOR DEFENDANT
14            v.                    SCOTT LONDON

15 SCOTT LONDON,

16            Defendant.

17

18      1.    This constitutes the plea agreement between SCOTT LONDON

19 ("defendant") and the United States Attorney's Office for the

20 Central District of California (the "USAO") in the investigation of

21 defendant's insider trading scheme.  This agreement is limited to

22 the USAO and cannot bind any other federal, state, local, or foreign

23 prosecuting, enforcement, administrative, or regulatory authorities.

24                      DEFENDANT'S OBLIGATIONS

25      2.    Defendant agrees to:

26            a)    Give up the right to indictment by a grand jury and,

27 at the earliest opportunity requested by the USAO and provided by

28 the Court, appear and plead guilty to an information in the form

1

attached to this agreement or a substantially similar form, which charges defendant with securities fraud through insider trading, in violation of Title 15, United States Code, Sections 78j(b), and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5.

b)   Not contest facts agreed to in this agreement.

c)   Abide by all agreements regarding sentencing contained in this agreement.

d)   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e)   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f)   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g)   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h)   Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a)   Not contest facts agreed to in this agreement.

b)   Abide by all agreements regarding sentencing contained in this agreement.

2

1        c)   At the time of sentencing, provided that defendant

2 demonstrates an acceptance of responsibility for the offenses up to

3 and including the time of sentencing, recommend a two-level

4 reduction in the applicable Sentencing Guidelines offense level,

5 pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move

6 for an additional one-level reduction if available under that

7 section.

8                  <u>NATURE OF THE OFFENSE</u>

9    4.   Defendant understands that for defendant to be guilty of

10 the crime charged in the information, that is, securities fraud

11 through insider trading, in violation of Title 15, United States

12 Code, Sections 78j(b), and 78ff and Title 17, Code of Federal

13 Regulations, Section 240.10b-5, the following must be true:

14        a)   Beginning no later than in or about October 2010, and

15 continuing through at least May 2012, defendant engaged in an

16 insider trading scheme in connection with the purchase or sale of

17 the stock of certain publicly-traded companies, meaning that:

18          i.   Defendant possessed material non-public

19 information regarding a publicly-traded company;

20          ii.   Defendant disclosed this material, non-public

21 information to another individual in anticipation that it would be

22 wrongfully used in connection with the purchase or sale of

23 securities;

24          iii. The other individual used the material, non-

25 public information provided by defendant in deciding whether to

26 purchase or sell the stock of a publicly-traded company; and

27

28

1          iv.   In return for disclosing the material, non-
2  public information, defendant anticipated some kind of benefit,
3  directly or indirectly.

4          b)   When defendant engaged in the insider trading scheme,
5  defendant acted willfully, knowingly, and with the intent to defraud
6  the publicly-traded companies and their shareholders; and

7          c)   In furtherance of that scheme, there occurred at
8  least one use of any means or instruments of transportation or
9  communication in interstate commerce or the use of the mails or any
10 facility of any national securities exchange.

11                    PENALTIES AND RESTITUTION

12     5.   Defendant understands that the statutory maximum sentence
13 that the Court can impose for a violation of Title 15, United States
14 Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal
15 Regulations, Section 240.10b-5, is: twenty years imprisonment; a
16 three-year period of supervised release; a fine of $5 million or
17 twice the gross gain or gross loss resulting from the offense,
18 whichever is greatest; and a mandatory special assessment of $100.

19     6.   Defendant understands that supervised release is a period
20 of time following imprisonment during which defendant will be
21 subject to various restrictions and requirements.  Defendant
22 understands that if defendant violates one or more of the conditions
23 of any supervised release imposed, defendant may be returned to
24 prison for all or part of the term of supervised release authorized
25 by statute for the offense that resulted in the term of supervised
26 release, which could result in defendant serving a total term of
27 imprisonment greater than the statutory maximum stated above.

28

1      7.   Defendant understands that defendant will be required to
2  pay full restitution to the victims of the offense to which
3  defendant is pleading guilty.  Defendant agrees that, in return for
4  the USAO's compliance with its obligations under this agreement, the
5  Court may order restitution to persons other than the victims of the
6  offense to which defendant is pleading guilty and in amounts greater
7  than those alleged in the count to which defendant is pleading
8  guilty.  In particular, defendant agrees that the Court may order
9  restitution to any victim for losses suffered by that victim as a
10 result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in
11 connection with the offense to which defendant is pleading guilty.

12     8.   Defendant understands that, by pleading guilty, defendant
13 may be giving up valuable government benefits and valuable civic
14 rights, such as the right to vote, the right to possess a firearm,
15 the right to hold office, and the right to serve on a jury.
16 Defendant understands that once the court accepts defendant's guilty
17 plea, it will be a federal felony for defendant to possess a firearm
18 or ammunition.  Defendant understands that the conviction in this
19 case may also subject defendant to various other collateral
20 consequences, including but not limited to revocation of probation,
21 parole, or supervised release in another case and suspension or
22 revocation of a professional license.  Defendant understands that
23 unanticipated collateral consequences will not serve as grounds to
24 withdraw defendant's guilty plea.

25     9.   Defendant understands that, if defendant is not a United
26 States citizen, the felony conviction in this case may subject
27 defendant to: removal, also known as deportation, which may, under
28 some circumstances, be mandatory; denial of citizenship; and denial

5

of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the Factual Statement attached as Exhibit A to this agreement.  Defendant and the USAO agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it

6

1 finds appropriate up to the maximum set by statute for the crimes of

2 conviction.

3     12.   Defendant and the USAO agree to the following applicable

4 Sentencing Guidelines factors:

5     Base Offense Level     :     8   [U.S.S.G. § 2B1.4]

6 There is no agreement between the parties regarding other specific

7 offense characteristics, adjustments, and departures which may

8 apply.  Instead, defendant and the USAO reserve the right to argue

9 that additional specific offense characteristics, adjustments, and

10 departures under the Sentencing Guidelines are appropriate.

11     13.   Defendant understands that there is no agreement as to

12 defendant's criminal history or criminal history category.

13     14.   Defendant and the USAO reserve the right to argue for a

14 sentence outside the sentencing range established by the Sentencing

15 Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

16 (a)(2), (a)(3), (a)(6), and (a)(7).

17 <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18     15.   Defendant understands that by pleading guilty, defendant

19 gives up the following rights:

20         a)    The right to persist in a plea of not guilty.

21         b)    The right to a speedy and public trial by jury.

22         c)    The right to be represented by counsel – and if

23 necessary have the court appoint counsel - at trial.  Defendant

24 understands, however, that, defendant retains the right to be

25 represented by counsel – and if necessary have the court appoint

26 counsel – at every other stage of the proceeding.

27

28

1    d) The right to be presumed innocent and to have the
2 burden of proof placed on the government to prove defendant guilty
3 beyond a reasonable doubt.

4    e) The right to confront and cross-examine witnesses
5 against defendant.

6    f) The right to testify and to present evidence in
7 opposition to the charges, including the right to compel the
8 attendance of witnesses to testify.

9    g) The right not to be compelled to testify, and, if
10 defendant chose not to testify or present evidence, to have that
11 choice not be used against defendant.

12    h) Any and all rights to pursue any affirmative
13 defenses, Fourth Amendment or Fifth Amendment claims, and other
14 pretrial motions that have been filed or could be filed.

15        WAIVER OF APPEAL OF CONVICTION

16  16.  Defendant understands that, with the exception of an
17 appeal based on a claim that defendant's guilty plea was
18 involuntary, by pleading guilty defendant is waiving and giving up
19 any right to appeal defendant's conviction on the offense to which
20 defendant is pleading guilty.

21 LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

22  17.  Defendant agrees that, provided the Court imposes a term
23 of imprisonment within the statutory maximum sentence specified
24 above, defendant gives up the right to appeal all of the following:
25 (a) the procedures and calculations used to determine and impose any
26 portion of the sentence; (b) the term of imprisonment imposed by the
27 Court; (c) the fine imposed by the Court, provided it is within the
28 statutory maximum; (d) the term of probation or supervised release

1   imposed by the Court, provided it is within the statutory maximum;

2   and (e) any of the following conditions of probation or supervised

3   release imposed by the Court: the conditions set forth in General

4   Orders 318, 01-05, and/or 05-02 of this Court; the drug testing

5   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

6   alcohol and drug use conditions authorized by 18 U.S.C.

7   § 3563(b)(7).

8       18.   Defendant also gives up any right to bring a post-

9   conviction collateral attack on the conviction or sentence,

10  including any order of restitution, except a post-conviction

11  collateral attack based on a claim of ineffective assistance of

12  counsel, a claim of newly discovered evidence, or an explicitly

13  retroactive change in the applicable Sentencing Guidelines,

14  sentencing statutes, or statutes of conviction.

15      19.   The USAO agrees that, provided that all portions of the

16  sentence are at or below the statutory maximum specified above, the

17  USAO gives up its right to appeal any portion of the sentence.

18                 RESULT OF WITHDRAWAL OF GUILTY PLEA

19      20.   Defendant agrees that if, after entering a guilty plea

20  pursuant to this agreement, defendant seeks to withdraw and succeeds

21  in withdrawing defendant's guilty plea on any basis other than a

22  claim and finding that entry into this plea agreement was

23  involuntary, then (a) the USAO will be relieved of all of its

24  obligations under this agreement; and (b) should the USAO choose to

25  pursue any charge that was not filed as a result of this agreement,

26  then (i) any applicable statute of limitations will be tolled

27  between the date of defendant's signing of this agreement and the

28  filing commencing any such action; and (ii) defendant waives and

gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

21. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

22. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

23. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a)   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b)   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c)   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

25.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

11

26.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.   While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

28.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the

12

1   USAO and defendant or defendant's attorney, and that no additional

2   promise, understanding, or agreement may be entered into unless in a

3   writing signed by all parties or on the record in court.

               PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4

5        29.   The parties agree that this agreement will be considered

6   part of the record of defendant's guilty plea hearing as if the

7   entire agreement had been read into the record of the proceeding.

8

9   AGREED AND ACCEPTED

10  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  ANDRÉ BIROTTE JR.
    United States Attorney

13

14  _____        5/21/13
    JAMES A. BOWMAN                 Date

15  Assistant United States Attorney
    MAJOR FRAUDS SECTION

16

17  _____        5/25/13

18  SCOTT LONDON                    Date
    Defendant

19

20  _____        5/25/13

21  HARLAND BRAUN                   Date
    Attorney for Defendant

22  SCOTT LONDON

23

24

25

26

27

28

                            13

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          ___5/25/13_____
SCOTT LONDON                              Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am SCOTT LONDON's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_Harland Braun_                    _5/25/13_

HARLAND BRAUN                     Date
Attorney for Defendant
SCOTT LONDON

15

**EXHIBIT A TO PLEA AGREEMENT - FACTUAL STATEMENT OF SCOTT LONDON**

**A.   Overview**

1.   Between approximately October 2010, and continuing until approximately May 2012, defendant SCOTT LONDON ("defendant") knowingly and willfully engaged a conspiracy with his friend, Bryan Shaw ("Shaw"), to commit securities fraud through insider trading. During the time period of the conspiracy, defendant was a senior partner at the accounting firm, KPMG, LLP.

2.   KPMG, LLP was an accounting firm that, among other things, audited the financial statements of public corporate entities and issued audit papers with respect to these financial statements. Because corporate clients disclosed financial information to KPMG in the course of such audits that had not yet been disclosed to the public, KPMG required that its employees maintain the confidentiality of information that they received through their employment at the firm.  KPMG also required that its employees not make securities trades based on confidential information obtained from its clients, not use that information for their own personal benefit, or disclose that information to any third party.

3.   Defendant was the partner in charge of the KPMG's audit practice for the Pacific Southwest region, including Southern California, Nevada, and Arizona.  Defendant was also the partner with primary responsibility at KPMG for handling the audits of certain large corporate clients, including, among others, Herbalife, Ltd ("Herbalife") and Skechers USA, Inc. ("Skechers").  Defendant also supervised accounting partners at KPMG who handled the audits for other large corporate clients, including, among others, Deckers Outdoor Corporation ("Deckers"), Pacific Capital Bancorp ("Pacific Capital"), and RSC Holdings, Inc. ("RSC Holdings").  Through his

1 position at KPMG, defendant regularly received confidential

2 information regarding the firm's corporate clients, including

3 confidential information regarding Herbalife, Skechers, Deckers,

4 Pacific Capital, and RSC Holdings.  Defendant and Shaw knew that

5 defendant was required by KPMG not to disclose confidential

6 information about the firm's clients.

7 **B.    The KPMG Clients**

8      4.    Herbalife was a global nutrition company, with

9 headquarters in Los Angeles, California, within the Central District

10 of California.  The common stock of Herbalife was registered with

11 the United States Securities and Exchange Commission ("SEC") under

12 Section 12(b) of the Securities Exchange Act of 1934 ("the '34

13 Act"), 15 U.S.C. § 781.  The common stock of Herbalife was listed on

14 the New York Stock Exchange under the ticker symbol "HLF."

15      5.    Skechers was a company that designed, manufactured, and

16 marketed footwear, with headquarters in Manhattan Beach, California,

17 within the Central District of California.  The common stock of

18 Skechers was registered with the SEC under the '34 Act, and was

19 listed on the New York Stock Exchange under the ticker symbol "SKX."

20      6.    Deckers was a company that designed, manufactured, and

21 marketed footwear and outdoor accessories, with headquarters in

22 Goleta, California, within the Central District of California.  The

23 common stock of Deckers was registered with the SEC under the '34

24 Act, and was listed on the Nasdaq National Market under the ticker

25 symbol "DECK."

26      7.    Pacific Capital was a bank holding company that operated

27 Santa Barbara Bank and Trust, N.A., with headquarters in Santa

28 Barbara, California, within the Central District of California.  The

common stock of Pacific Capital was registered with the SEC under

the '34 Act, and was listed on the Nasdaq National Market under the ticker symbol "PCBC."  On or about March 12, 2012, Pacific Capital announced that it was being acquired by UnionBanCal Corporation and its primary subsidiary Union Bank, N.A. (collectively referred to herein as "Union Bank").

8.   RSC Holdings was a company that leased construction and industrial equipment, with headquarters in Scottsdale, Arizona.  The common stock of RSC Holdings was registered with the SEC under the '34 Act, and was listed on the New York Stock Exchange under the ticker symbol "RRR."  On or about December 16, 2011, RSC Holdings announced that it was being acquired by United Rentals, Inc. ("United Rentals").

C.   **The Insider Trading Conspiracy**

9.   Defendant's insider trading conspiracy with Shaw operated as follows:

a.   Defendant would obtain material, non-public information ("inside information") regarding certain publicly-traded KPMG clients, including Herbalife, Skechers, and Deckers, including but not limited to inside information regarding those companies' earnings and financial outlook.  On two occasions, defendant also obtained inside information regarding the planned acquisitions of Pacific Capital and RSC Holdings.

b.   Defendant would provide the inside information regarding Herbalife, Skechers, Deckers, Pacific Capital, and RSC Holdings to Shaw, in violation of (1) the fiduciary and other duties of trust and confidence that defendant owed to KPMG and its clients; (2) the expectations of confidentiality of KPMG's clients; and (3) KPMG's policies regarding the use and safekeeping of inside information.  In providing this inside information to Shaw,

defendant knew that Shaw would make securities transactions based on that inside information, thereby generating substantial illegal profits.

        c.   Shaw would use the inside information belonging to KPMG and its clients, knowing that defendant had provided that inside information in violation of a duty of trust and confidence, to make securities transactions in Herbalife, Skechers, Deckers, Pacific Capital, and RSC Holdings.

        d.   In all, defendant disclosed inside information to Shaw regarding at least 14 separate earnings announcements or acquisitions for KPMG clients, including but not limited to:

- Herbalife's May 2, 2011 Earnings Announcement;
- United Rentals' December 16, 2011 Announcement of its Acquisition of RSC Holdings;
- Herbalife's February 21, 2012 Earnings Announcement;
- Deckers' February 23, 2012 Earnings Announcement;
- Union Bank's March 12, 2012 Announcement of its Acquistion of Pacific Capital; and
- Deckers' April 26, 2012 Earnings Announcement.

        e.   As a result of Shaw's securities trades based on the inside information provided by defendant, Shaw generated at least $1,270,000 in illegal profits. Defendant's position is that he was not aware of how much Shaw profited from trading on the inside information provided by defendant and could not have reasonably foreseen that the profits would be as high as they actually were. The parties reserve the right to dispute the amount of illegal profits for which defendant should be accountable for the purposes of sentencing.

f.   After generating these illegal profits, Shaw would secretly make cash payments to defendant as compensation for providing the inside information regarding KPMG's clients.  Shaw also gave things of value to defendant as compensation for the inside information, including concert tickets, a Rolex Daytona Cosmograph watch, and jewelry.  The parties reserve the right to dispute the values of the cash and non-cash items that were provided to defendant.

**D.   Selected Examples of Insider Trading by Defendant and Shaw**

(1)   Insider Trading Related to Herbalife's May 2, 2011 Earnings Announcement

10.   In or about April 2011, defendant disclosed inside information to Shaw regarding Herbalife's earnings for the quarter ended March 31, 2011.  After disclosing that inside information to Shaw, defendant knew that Shaw then made trades in the securities of Herbalife based on that inside information, before the information was disclosed to the public.

11.   On May 2, 2011, Herbalife announced record earnings for the quarter ended March 31, 2011.  Defendant knew that after that announcement, Shaw sold the securities of Herbalife that he had purchased based on the inside information from defendant, thereby generating illegal profits.  The parties reserve the right to dispute the amount of illegal profits from these trades for which defendant should be accountable for the purposes of sentencing.

(2)   Insider Trading Related to United Rentals' December 16, 2011 Acquisition of RSC Holdings

12.   On or about December 12, 2011, defendant called Shaw and disclosed inside information to Shaw regarding the fact that United Rentals may acquire RSC Holdings.  On or about December 14, 2011, defendant again called Shaw and disclosed additional inside

1   information regarding United Rentals' potential acquisition of RSC

2   Holdings.  After disclosing that inside information to Shaw,

3   defendant knew that Shaw then made trades in the securities of RSC

4   Holdings based on that inside information, before the information

5   was disclosed to the public.

6       13.   On December 16, 2011, RSC Holdings and United Rentals

7   jointly announced that United Rentals was acquiring RSC Holdings.

8   Defendant knew that after that announcement, Shaw sold the

9   securities of RSC Holdings that he had purchased based on the inside

10  information from defendant, thereby generating illegal profits.  The

11  parties reserve the right to dispute the amount of illegal profits

12  from these trades for which defendant should be accountable for the

    purposes of sentencing.

13      (3)   Insider Trading Related to Union Bank's March 12, 2012

14            Acquisition of Pacific Capital

15      14.   On or about February 3, 2012, defendant called Shaw and

16  disclosed inside information to defendant regarding the fact that

17  Union Bank may acquire Pacific Capital.  After disclosing that

18  inside information to Shaw, defendant knew that Shaw then made

19  trades in the securities of Pacific Capital based on that inside

    information, before the information was disclosed to the public.

20      15.   On or about March 12, 2012, Union Bank had announced that

21  it was acquiring Pacific Capital.  Defendant knew that after that

22  announcement, Shaw sold the securities of Pacific Capital that he

23  had purchased based on the inside information from defendant,

24  thereby generating illegal profits.  The parties reserve the right

25  to dispute the amount of illegal profits from these trades for which

26  defendant should be accountable for the purposes of sentencing.

27  ///

28

                                21

     (4)   <u>Insider Trading Related to Deckers' April 26, 2012</u>
<u>Earnings Announcement</u>

    16.  On or about April 18, 2012, defendant called Shaw and disclosed inside information to Shaw regarding Deckers' earnings for the quarter ended March 31, 2012.  After disclosing that inside information to Shaw, defendant knew that Shaw then made trades in the securities of Deckers based on that inside information, before the information was disclosed to the public.

    17.  On April 26, 2012, Deckers announced disappointing financial results for the quarter ended March 31, 2012.  Defendant knew that after that announcement, Shaw sold the securities of Deckers that he had purchased based on the inside information from defendant, thereby generating illegal profits.  The parties reserve the right to dispute the amount of illegal profits from these trades for which defendant should be accountable for the purposes of sentencing.